1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11

ROBERT LEE SLAUGHTER,

                              Plaintiff,

        v.

MICHAEL J. ASTRUE. Commissioner of
Social Security,

                              Defendant.

Case No. 3:12-cv-05354-KLS

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

12
13
14
15
16
17
18
19

        Plaintiff has brought this matter for judicial review of defendant's denial of his

application for disability insurance benefits.  Pursuant to 28 U.S.C. § 636(c), Federal Rule of

Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard

by the undersigned Magistrate Judge.  After reviewing the parties' briefs and the remaining

record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny

benefits should be reversed and that this matter should be remanded for further administrative

proceedings.

20
21

FACTUAL AND PROCEDURAL HISTORY

22
23
24
25
26

        On April 7, 2010, plaintiff filed an application for disability insurance benefits, alleging

disability as of August 15, 2005, due to an adjustment disorder, anxiety, severe depression,

anger, and a back injury. See Administrative Record ("AR") 11, 147, 165.  That application was

denied upon initial administrative review on July 8, 2010, and on reconsideration on November

19, 2010. See AR 11.  A hearing was held before an administrative law judge ("ALJ") on

ORDER - 1

October 6, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 27-79.

In a decision dated October 27, 2011, the ALJ determined plaintiff to be not disabled. See AR 11-22.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on March 27, 2012, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981.  On April 23, 2012, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1.  The administrative record was filed with the Court on June 26, 2012. See ECF #9.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in rejecting a determination of disability and unemployability made by the United States Department of Veterans Affairs ("VA"); (2) in evaluating the medical evidence in the record; (3) in assessing plaintiff's residual functional capacity; and (4) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy.  The Court agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, finds that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

<u>DISCUSSION</u>

The determination of the Commissioner of Social Security (the "Commissioner") that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); <u>see also</u> <u>Batson v.</u>

ORDER - 2

Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record.").  "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.       The ALJ's Rejection of the VA's Disability and Unemployability Determination

The record contains a "Rating Decision," dated September 15, 2009, issued by the VA,

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them.  It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may not try the case de novo, neither may it abdicate its traditional function of review.  It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

which reads in relevant part:

1. Service connection [disability] for adjustment disorder with anxiety and depression . . . is granted with an evaluation of 70 percent effective June 16, 2008.

2. Service connection [disability] for arthritis of the thoracolumbar spine, residual of injury is granted with an evaluation of 40 percent effective June 16, 2008.

3. Entitlement to individual unemployability is granted effective January 10, 2009.

AR 140.  With respect to that Rating Decision, the ALJ found in relevant part:

> I have . . . considered the determination reached by the VA.  The claimant was awarded a 70 percent disability rating from the VA as a result of his adjustment disorder with depression and a 40 percent disability rating related to his back impairment (Exhibit 1D).  The Ninth Circuit held in *McCarty v. Massanari* that, because the VA and [Social Security Administration] SSA apply different standards in determining disability, an Administrative Law Judge may give less weight to a VA disability rating so long as he gives specific reasons for doing so. *McCartey*, 298 F.3d 1072 (9th Cir. 2002).  In this case, the VA disability rating is persuasive evidence that the claimant has a condition that impairs his vocational functioning.  However, the partial VA disability rating does not support a conclusion that the claimant is unable to perform any work, such as the work with limited social contact as set forth in the above functional capacity.  I therefore give some, but not great, weight to the fact that the VA found the claimant disabled.

AR 19.

Although a determination by the VA about whether a claimant is disabled is not binding on the SSA, an ALJ must consider that determination in reaching his or her decision. <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir. 2002); 20 C.F.R. § 404.1504.  Further, the ALJ "must ordinarily give great weight to a VA determination of disability." <u>McCartey</u>, 298 F.3d at 1076.  This is because of "the marked similarity" between the two federal disability programs:

> Both programs serve the same governmental purpose--providing benefits to those unable to work because of a serious disability.  Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's

ORDER - 4

functional limitations; and both require claimants to present extensive medical documentation in support of their claims. . . . Both programs have a detailed regulatory scheme that promotes consistency in adjudication of claims. Both are administered by the federal government, and they share a common incentive to weed out meritless claims. The VA criteria for evaluating disability are very specific and translate easily into SSA's disability framework.

Id.  However, "[b]ecause the VA and SSA criteria for determining disability are not identical," the ALJ "may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." Id. (citing Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001). Here, the ALJ did not do so.

As noted by plaintiff, the ALJ cited no medical opinion source or other evidence "that disagrees with or contradicts the VA disability rating and finding of unemployability." ECF #13, p. 26. Rather, all the ALJ did was state that the Rating Decision "does not support a conclusion that the claimant is unable to perform any work." AR 19. This statement falls well short of the "persuasive, specific, valid reasons" required for giving less weight to such a determination from the VA. McCartey, 298 F.3d at 1076. Indeed, the ALJ gave *no* reason for doing so in this case. Defendant disagrees, arguing in relevant part:

> . . . The ALJ went on to discount several medical source opinions from the VA, in part, based on Plaintiff's activities and medical evidence that was not available to the VA ([AR] 19-20). Thus, it appears that the ALJ gave less weight to the VA disability rating, in part, because the ALJ discounted evidence from the VA based on the record before the ALJ, which included evidence the VA did not rely upon . . .

ECF #17, p. 5. The problem for defendant, however, is that the ALJ did not state this was what she was doing, nor is it reasonable to infer such a finding from the ALJ's decision, given that the ALJ did not relate her subsequent analysis of the medical evidence in the record to her rejection of the VA Rating Decision. See AR 19-20; Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989) (court may draw "specific and legitimate inferences from the ALJ's opinion"). As such,

ORDER - 5

the ALJ erred here.

II.        The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him

or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.    Dr. Soelling

Plaintiff takes issue with the ALJ's following findings:

Some weight is given to the opinion of Mark Soelling, Ph.D[.], with the VA regarding the claimant's limitations from his chronic adjustment disorder and angry episodes.  Dr. Soelling found the claimant had only slight cognitive limitations related to work related activities, but had marked issues with his ability to work with the public, supervisors, and coworkers and respond appropriately to work pressures (Exhibit 20F/2, 3).  The residual functional capacity found in this decision falls within the range of cognitive functioning opined by Dr. Soelling.  However, I do not find the psychologist's opinion as to social functioning to be persuasive.  Although Dr. Soelling treated the claimant over 17 sessions, the social limitations are likely based largely on the claimant's subjective reports of which there are significant credibility concerns.  Furthermore, Dr. Soelling's opinion is based in part on the VA determination of disability and that determination is not controlling or based on the same criteria as our Regulations as discussed [above].

ORDER - 7

AR 19.  Specifically, plaintiff argues the ALJ's conclusion that Dr. Soelling's limitations "are likely based largely on [his] subjective reports" (id.), is speculative and not supported by substantial evidence.  The Court disagrees.

Dr. Soelling states he based his opinion in part on the "17 sessions" he had with plaintiff, including his "therapy impressions" obtained therefrom and "the neuropsychological note."  AR 716-17.  First, it is not at all clear what "the neuropsychological note" refers to.  In addition, progress notes from Dr. Soelling's sessions provide little in the way of objective clinical findings supportive of the marked social functioning limitations he assessed.  See AR 534-35, 545, 549-50, 555-56, 559-60, 564-65, 658, 665-69, 672-73, 675, 684, 686-87, 695, 699-700.  It was reasonable for the ALJ, therefore, to infer from such lack of objective clinical findings that Dr. Soelling based his assessment largely on plaintiff's self-reporting, given the ALJ's unchallenged adverse credibility determination.  See AR 16-18; Tonapetyan, 242 F.3d at 1149 (medical opinion premised on claimant's subjective complaints may be rejected where record supports ALJ in discounting claimant's credibility); Morgan, 169 F.3d at 601 (same).  As such, even though the Court agrees the ALJ erred in discounting Dr. Soelling's opinion in part because it also was based on the VA Rating Decision – given the ALJ's improper rejection of that decision discussed above – the ALJ properly discounted Dr. Soelling's opinion overall.[2]

---

[2] Plaintiff points to Flanery v. Chater, 112 F.3d 346 (8th Cir. 1997), and 1997), and Ryan v. Commissioner of Social Sec., 528 F.3d 1194 (9th Cir. 2008), as a further basis on which to challange the ALJ's rejection of Dr. Soeller's functional assessment on this basis.  In Flannery, the Eighth Circuit commented that "[a] patient's report of complaints, or history, is an essential diagnostic tool," and that "[a]ny medical diagnosis must necessarily rely upon the patient's history and subjective complaints."  112 F.3d at 350 (citation omitted).  That Court noted, however, that there was "nothing in the record" in that case "to suggest that "the claimant's "medical professionals should have doubted [her] word," and that "[h]er claimed symptoms [we]re consistent with objective tests . . . the nature of her disorder, and eyewitness testimony."  Id.  But in this case, as discussed elsewhere herein, the medical evidence in the record is not consistent with plaintiff's testimony or Dr. Soelling's assessment.  In Ryan, the Ninth Circuit stated that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the [claimant's] complaints where the [examining physician] does not discredit those complaints and supports his [or her] ultimate opinion with his [or her] own observations."  Id. at 1199-1200.  Again,

ORDER - 8

Plaintiff further argues Dr. Soelling's social functioning limitations should be upheld, in light of the fact that he "provided his professional opinion" about the reasons therefor, namely that plaintiff "has difficulties making accurate attributions about others, especially those in positions of higher status, power and/or authority," and that his mood is "unstable with frequent angry episodes." ECF #13, p. 15 (quoting AR 717).  But again, there is nothing in Dr. Soelling's opinion or progress notes to indicate exactly what clinical findings or other evidence he based that opinion on, except for plaintiff's own subjective complaints and self-reports.  Plaintiff also argues Dr. Soelling's assessment is supported by his "loss of 6 jobs in a few years" and the evaluation report of Laurie Akers, M.A. ECF #13, p. 16.  However, Dr. Shoelling did not state he was basing his assessment on plaintiff's loss of jobs, which again would constitute self-reporting as opposed to clinical findings.

Nor has plaintiff shown the loss of those jobs is attributable to the specific limitations Dr. Shoelling assessed, or that even if it is, that fact would outweigh the lack of objective clinical support therefor.  In addition, as discussed in greater detail below, the ALJ also did not err in rejecting Ms. Akers's report.  Plaintiff also asserts the ALJ "overlooks the fact that Dr. Soelling has access to plaintiff's entire VA medical record." ECF #13, p. 16.  Again, though, Dr. Soelling did not state he based his functional assessment on his review thereof, nor has plaintiff shown that record supports that assessment.  Finally, plaintiff argues it was improper for the ALJ to presume that Dr. Soelling "would risk his medical license and violate his professional ethical standards" to help plaintiff with his disability claim, "by opining [as to] functional limitations which were unsupported by his own medical findings," that is, by lying. Id.  But there is a very real difference between not fully supporting one's functional assessment with objective clinical

though, the Court of Appeals went on to note that there was "nothing in the record to suggest" the examining physician in that case "relied on [the claimant's] description of her symptoms . . . more heavily than his own clinical observations." Id. at 1200.  Once more, such is not the case here as discussed above.

ORDER - 9

findings and lying about the claimant's actual condition.  The ALJ specifically found in regard to the former, not the latter.  She did not err in doing so.

B.   Ms. Miles

Plaintiff challenges as well the following findings made by the ALJ:

> Little weight is given to the medical source statement of Sue Miles, PA-C, who opined that the claimant had generally marked and some extreme limitations in social aspects of work settings (Exhibit 19F/3)[.]  She opined that the claimant is easily cued to anger and triggered by certain conditions including stress, to anger anxiety or panic (Exhibit 19F/3).  She noted opined [sic] that medications and psychotherapy have minimally improved the claimants [sic] symptoms but that he remained markedly disabled (Id).  This opinion is in direct contrast to the claimant's reports to his VA treatment providers that his medication helps and his depression and anxiety were under fair control (Exhibit 18F/15).  This opinion is also inconsistent regarding the claimants [sic] reported activities regarding his interpersonal relationships and his volunteer work with disabled persons and fostering dogs.

AR 19-20.  Plaintiff argues that in so finding, the ALJ ignored other evidence that his symptoms remain problematic.  But the substantial evidence in the record overall indicates the improvement and control found by the ALJ. See AR 266, 272, 326, 343, 349, 435, 445, 448, 482, 529, 534-36, 543-45, 549-50, 553-56, 559-60, 564-65, 569-70, 656, 658-59, 663, 665-70, 673, 675, 678-79, 684-87, 695-97, 700, 702, 705-06.

Plaintiff further argues the ALJ failed to consider the fact that Ms. Miles specializes in psychiatry and provided a narrative statement in support of her opinion.  Although a medical source's specialization warrants greater deference than those sources who are not experts in the particular area of specialty – at least in regard to issues related thereto (see Benecke v. Barnhart, 379 F.3d 587 n.4 (9th Cir. 2004) – plaintiff has not shown how Ms. Miles's expertise overcomes the inconsistency between her opinion and evidence of medical improvement here.  Nor did the ALJ give greater deference to any medical source that did not also possess the same expertise in the field of psychiatry/psychology.  In addition, the narrative Ms. Miles provided merely appears

ORDER - 10

to be a recitation of plaintiff's self-reports and subjective complaints, which as discussed above the ALJ properly discredited. See AR 714.

Lastly, plaintiff asserts the ALJ erred in not considering "the frequency of contact and the consistency of [Ms. Miles's] opinions with those from Dr. Soelling and the VA's determination of disability and unemployability." ECF #13, p. 17.  But the ALJ did not err in his evaluation of Dr. Soelling's opinion, and plaintiff has not shown how the frequency of Ms. Miles's contact with plaintiff is alone evidence of greater accuracy in her opinion, particularly given, once more, the evidence in the record of symptom control and improvement.  Further, while the ALJ, as discussed above, did not provide sufficient reasons for rejecting the VA's Rating Decision, and thus erred in failing to do so, it is not at all clear that the substantial evidence in the record supports that Rating Decision, in light of the propriety of the ALJ's evaluation of the medical and other evidence discussed herein.  Thus, the VA's Rating Decision does not provide reliable support for Ms. Miles's opinion, again especially given the evidence in the record concerning symptom control and improvement.

C.   Ms. Akers

Plaintiff next challenges the following analysis of the findings of Ms. Akers provided by the ALJ:

> Little weight is . . . given to the [global assessment of functioning] GAF score assigned by Ms. Akers (Exhibit 7F/15).  The claimant has been assessed [a GAF] score of 50[3] (Exhibit 7F/15).  This score is inconsistent with the claimant's own self-reported activities including golfing, playing racquet ball one to two times a week, weight lifting, and building a wood shed (Exhibit 3F/10; 8F/34; 18F/22).  In addition, GAF scores may be highly subjective and

---

[3] "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 34); see also England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007) (GAF score of 50 reflects serious limitations in individual's general ability to perform basic tasks of daily life).

ORDER - 11

> reflect only a snapshot in time.  The GAF scores intertwine psychological
> symptoms, physical impairments and socioeconomic factors, and therefore I
> cannot place a high degree of reliance on these scores or any opinions
> associated with the scores.  As indicated above, the claimant presents with
> credibility issues, which diminishes the credibility of any statements made by
> the claimant, especially his subjective complaints of symptoms, and any
> conclusions based on those complaints.  Since these scores are primarily based
> upon subjective symptoms and taking the claimant's credibility issues into
> consideration, I give these scores little weight for the aforementioned reasons.

AR 20.  Plaintiff argues the above analysis is deficient, because the ALJ failed to address "the

anger issues" he had and the "findings which are consistent with those from Dr. Soelling and

PA-C Miles." ECF #13, p. 18.  But plaintiff fails to point to any specific evidence in the record

to support his argument here, let alone show how such evidence contradicts the ALJ's findings.

In addition, as discussed above the ALJ did not err in evaluating the opinions and findings from

Dr. Soelling and Ms. Miles, and plaintiff has not challenged the ALJ's finding that he is not fully

credible concerning his subjective complaints, including his anger issues. See AR 16.

  The Court does agree that to the extent the ALJ discounted the GAF score assessed by

Ms. Miles on the basis of plaintiff's physical capacity to engage in sports or other activities she

erred, given that a GAF score concerns mental functioning. See England, 490 F.3d at 1023, n.8

(noting GAF score is relevant evidence of claimant's ability to function mentally).  On the other

hand, the activities the ALJ notes above also indicate an ability to perform mental functional

tasks at a level at odds with, for example, plaintiff's claims regarding difficulties with memory

and concentration. See AR16, 20.  The ALJ also pointed to plaintiff's credibility issues, which

diminishes the reliability of the GAF score Ms. Miles assessed, as it is inherently subjective in

nature. See Pisciotta, 500 F.3d at 1076 n.1 (GAF score is subjective determination based on scale

of 100 to 1 of  clinician's judgment of overall level of functioning) (citation omitted).  The ALJ,

accordingly, did not err overall in declining to adopt that score.

ORDER - 12

D.      Dr. Hoskins, Dr. Fitterer and Dr. Robinson

In terms of the remaining medical evidence in the record, the ALJ found in relevant part:

> . . . [S]ignificant weight is given to the State agency physical assessment of Robert Hoskins, M.D., who opined the claimant had the functional capacity to perform work at the light exertional level with occasional climbing, balancing, stooping, and crouching, no climbing of ropes, ladders, or scaffolds, and avoiding concentrated exposure to vibrations and hazards (Exhibit 10F).  This opinion is consistent with the October 2009 opinion of Tony Bingaman who also provided a similar functional capacity assessment (Exhibit 4F).  The opinion of Dr. Hoskins is supported by the objective findings in the medical record regarding the claimant's range of movement and flexion abilities and by his reported daily activities including making wood shingles and taking care of two very large dogs.

AR 18.  Plaintiff asserts error here because the ALJ did not cite any specific exhibits in the record, and the VA's Rating decision notes reduced flexion and extension, as well as tenderness, pain, muscle spasm and altered gait.  See ECF #13, pp. 19-20 (citing AR 143).  Although the ALJ did not make specific citations in the paragraph quoted above, he made such citations in the immediately preceding page of his decision.  See AR 17.  In addition, while the VA's Rating Decision may have made such notation, that decision does not constitute a medical record.  In any event, the weight of the objective clinical findings supports the ALJ here.  See AR 298, 314, 323, 328, 429, 437, 458-59.

Plaintiff also takes issue with the ALJ's statement that Dr. Hoskins's opinion is consistent with his daily activities.  But again the Court finds no error, as there is evidence in the record that plaintiff has spent a fair amount of time engaging in significant physical activities.  See, e.g., AR 432 ("Continues to play racketball [sic] 1-2 times a week and lifting weight several times a week."); 445 (same).   Plaintiff argues he "never made any shingles, and even if he did," it "does not correlate to the ability to perform light work."  ECF #13, p. 20.  The record reveals otherwise.  For example, in late July 2011, Ms. Miles reported in relevant part that:

ORDER - 13

> . . . He has become involved with a man who runs an adventure camp . . . , is making wood shingles from trees he is chopping up for him (the man is disabled, needs the help).  They are exchanging services -- vet is using the wood shingles to build a woodshed.  This is keep [sic] vet active, motivated -- he was having trouble getting up and going (e.g., to the gym), and this is replacing that activity.

AR 663.  It thus appears plaintiff not only was making wood shingles, but he also was chopping wood and building a woodshed, which indicates an ability on his part to engage in work activity at level at least equal to the modified range of light work assessed by both Dr. Hoskins and the ALJ. See AR 15, 18, 509-16.

Plaintiff also challenges the ALJ's following evaluation of the medical evidence in the record:

> Significant weight is also given to the State agency mental assessment done by psychologist Beth Fitterer, Ph.D. (Exhibit 5F).  Dr. Fitterer opined that based on her review of the medical record the claimant had generally mild limitations in the four domains of functioning except for some moderate limitations in social functioning related to the claimant's ability to get along with coworkers, supervisors and the general public as well as his ability to respond appropriately to changes in the work setting (Exhibit 5F/2; 6F/11).  Dr. Fitterer opined the claimant can carry out short simple and well-learned multi-step complex instructions and make simple work related decisions, but will perform best with limited social contact and may have trouble accepting criticism and dealing with co-worker conflicts (Exhibit 5F/3).  This opinion was later affirmed by Michael Regets, Ph.D. (Exhibit 14F).  This opinion is consistent with the claimant's reports to his treatment providers regarding his interpersonal relationships and treatment notes regarding the claimant's frustration with supervisory entities.  This opinion is also consistent with the opinion of State agency psychologist John F. Robinson, Ph.D., noted below.  As to cognitive functioning, the residual functional capacity assigned falls within the range of functioning opined by Dr. Robinson.

> Significant weight is also given to the State agency mental assessment done by John F. Robinson, Ph.D., who similarly opined that the claimant had generally mild limitations in the four domains of functioning except for moderate limitations in social interaction specifically relating to the claimant's ability to get along with coworkers, supervisors, the general public and in his ability to respond appropriately to changes in the work setting (Exhibit 9F/11; 11F/3).  Dr. Robinson noted the claimant has the ability to [sic] simple repetitive tasks and follow simple instructions, work on a limited basis with

1
2
3
4

> coworkers and the public and can adjust to mild changes in the workplace
> (Exhibit 11F/3).  This opinion is consistent with the claimant's reports to his
> treatment providers regarding his interpersonal relationships and treatment
> notes regarding the claimant's frustration with supervisory entities.  This
> opinion is also consistent with the opinion of State agency psychologist Beth
> Fitterer, Ph.D., noted above.

5

6

7

8

9

10

11

12

AR 18-19.  Plaintiff argues the ALJ erred by failing to consider the fact that neither of the above

psychologists "had the benefit of over 250 pages of treatment notes and assessments from [Ms.]

Akers, [Ms.] Miles and Dr. Soelling." ECF #13, p. 20.  But plaintiff fails to explain specifically

what in those treatment notes and assessments contradict the opinions of Dr. Fitterer and Dr.

Robinson.  In addition, as discussed above the ALJ properly discounted the opinions of Dr.

Soelling, Ms. Akers and Ms. Miles, and therefore any inconsistency with Dr. Fitterer's and Dr.

Robinson's opinions is not a sufficient basis for overturning the ALJ's findings in regard thereto.

13

14

15

16

17

18

19

Plaintiff goes on to argue that neither Dr. Fitterer nor Dr. Robinson "addressed the

ramifications of [his reported] repeated conflicts with supervisors or coworkers" (ECF #13, pp.

20-21), but once again no showing has been made that the social functional limitations they

found are inconsistent therewith.  Lastly, it is true that the opinion of a non-examining medical

source does not constitute substantial evidence, unless it is consistent with other independent

evidence in the record.  See Lester, 81 F.3d at 830-31; Tonapetyan, 242 F.3d at 1149.[4]  Plaintiff,

20

21

22

23

24

25

26

---

[4] Plaintiff relies on the Ninth Circuit's decision in Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007), to argue as follows:

> . . . The opinions of Drs. Robinson and FItterer do not constitute "independent clinical
> findings" [– and thus substantial evidence –] as they did not provide differing diagnoses or
> rely on objective tests not considered by the treating and examining physicians.  They merely
> looked at the record and provided conclusions with the little independent explanation. . . .

ECF #13, p. 21.  But that portion of Orn on which plaintiff relies is not applicable here, as it concerns the situation
"[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or
her conclusions." 495 F.3d at 632 (emphasis added).  In such a situation, the examining physician's conclusions are
deemed not to be substantial evidence. Id.  As the Ninth Circuit went on to explain:

> . . . "In this case, ... the findings of the non-treating [examining] physician were the same as
> those of the treating physician. It was his conclusions that differed.... If the ALJ wishes to
> disregard the opinion of the treating physician, he or she must make findings setting forth
> specific, legitimate reasons for doing so that are based on substantial evidence in the record."

ORDER - 15

1  though, has not shown the opinions of Drs. Fitterer and Robinson to be inconsistent with the

2  weight of the medical and other evidence in the record as found by the ALJ.

3  III.  The ALJ's Assessment of Plaintiff's Residual Functional Capacity

4  Defendant employs a five-step "sequential evaluation process" to determine whether a

5  claimant is disabled. See 20 C.F.R. § 404.1520.  If the claimant is found disabled or not disabled

6  at any particular step thereof, the disability determination is made at that step, and the sequential

7  evaluation process ends. See id.  If a disability determination "cannot be made on the basis of

8  medical factors alone at step three of that process," the ALJ must identify the claimant's

9  "functional limitations and restrictions" and assess his or her "remaining capacities for work-

10  related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's

11  residual functional capacity ("RFC") assessment is used at step four to determine whether he or

12  she can do his or her past relevant work, and at step five to determine whether he or she can do

13  other work. See id.

14  Residual functional capacity thus is what the claimant "can still do despite his or her

15  limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all

16  of the relevant evidence in the record. See id.  However, an inability to work must result from the

17  claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those

18  limitations and restrictions "attributable to medically determinable impairments." Id.  In

---

By contrast, when an examining physician provides "independent clinical findings that differ from the findings of the treating physician," such findings are "substantial evidence." Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered.

Id. (emphasis in original) (internal citations omitted).  Here, though, neither Dr. Fitterer nor Dr. Robinson examined plaintiff.  In addition, there is nothing to show that Drs. Fitterer and Robinson relied on the same clinical findings as the other treating and examining medical sources in the record, but instead based their opinions on their own review of the medical and other evidence in the record overall.  See AR 367, 381, 519.  It should be noted, furthermore, that both Dr. Fitterer and Dr. Robinson provided fairly detailed summaries of the medical and other evidence they relied on in arriving at the functional assessments that they did. See id.

ORDER - 16

assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

> **. . . to perform light work as defined in 20 CFR 404.1567(b) lifting 10 pounds frequently and 20 pounds occasionally, with occasional climbing, balancing, stooping, and crouching, no climbing of ropes, ladders, or scaffolds, and avoiding concentrated exposure to vibrations and hazards such as machinery and heights. The claimant can work in low stress, unskilled work requiring simple repetitive tasks, rare changes in the work setting, rare judgment or decision-making, no interaction with the general public, occasional superficial interaction with coworkers, essentially isolated with only occasional supervision.**

AR 15 (emphasis in original). Plaintiff argues the ALJ "failed to consider that her RFC findings equate to a 'substantial loss' in dealing with supervision, coworkers and usual work situations such that a finding of disability under [Social Security Ruling ("SSR") 85-15, 1985 WL 56857,] is warranted." ECF #13, p. 22. Specifically, plaintiff asserts such consideration on the part of the ALJ is necessary, because pursuant to SSR 85-15:

> . . . A person whose vocational factors of age, education, and work experience would ordinarily be considered favorable (i.e., very young age, university education, and highly skilled work experience) would have a severely limited occupational base if he or she has a mental impairment which causes a substantial loss of ability to respond appropriately to supervision, coworkers, and usual work situations. . . .

1985 WL 56857 *4. In such a case, SSR 85-15 further provides that "[a] finding of disability would be appropriate." Id. The section of SSR 85-15 plaintiff relies on here, however, concerns solely those cases where the claimant's "only impairment is mental." Id. Thus, SSR 85-15 "is not the proper legal standard for determining whether plaintiff is disabled," as he has alleged and the ALJ has found him to have functional limitations stemming from a physical impairment as

ORDER - 17

well. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997)[5]; SSR 85-15, 1985 WL 56857 *4;

see also AR 13, 165.  As such, plaintiff's argument on this issue is without merit.

Also without merit is plaintiff's argument that the ALJ failed to account for all of the

limitations identified by his treatment providers, given that as discussed above the ALJ did not

err in evaluating the medical evidence in the record from those providers.  So too is plaintiff's

assertion that the "inconsistency" between the moderate limitations in concentration, persistence

and pace the ALJ found at step three of the sequential disability evaluation process, and the

failure to include such a limitation in her assessment of his residual functional capacity.[6]  On the

---

[5] In Sandgathe, the Ninth Circuit specifically found that:

> [The claimant] also argues that Social Security Ruling (SSR) 85–15 provides the proper legal standard for determining whether he is disabled, and that under SSR 85–15 he is entitled to benefits based on his alleged mental limitations. SSR 85–15 states that benefits may be awarded where a claimant suffers from a "substantial loss" of the abilities "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85–15 at 94 (Cum.Ed.1985). SSR 85–15, however, "provides guidance only for cases in which the claimant asserts 'solely nonexertional impairments.'" *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir.1995) (quoting SSR 85–15 at 92), cert. denied, 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996). [The claimant] asserts that his impairments limit, among other things, his abilities to sit and lift, which are exertional limitations. See SSR 83–10 at 178 (Cum.Ed.1983) (defining exertional activity to include sitting and lifting). SSR 85–15 therefore does not apply.

108 F.3d at 980-81.

[6] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920.  At step two thereof, the ALJ must determine if an impairment is "severe." Id.  At step three of the evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  See 20 C.F.R § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  In terms of steps two and three of this process, 20 C.F.R. § 416.920a(d) provides in relevant part that:

> (1) If we rate the degree of your limitation in the first three functional areas [of activities of daily living, social functioning and concentration, persistence or pace (see 20 C.F.R. § 416.920a(c)(3)] as "none" or "mild" and "none" in the fourth area [of episodes of decompensation (see id.)], we will generally conclude that your impairment(s) is not severe [at step two], unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 416.921).
>
> (2) If your mental impairment(s) is severe, we must then determine if it meets or is equivalent in severity to a listed mental disorder [at step three].  We do this by comparing the medical findings about your impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder.  We will record the presence or absence of

ORDER - 18

other hand, because, as discussed above, the ALJ failed to provide sufficient reasons for rejecting the VA's Rating Decision, the accuracy of the ALJ's residual functional capacity assessment cannot be upheld on that basis.

IV.    The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony

the criteria and the rating of the degree of functional limitation on a standard document at the initial and reconsideration levels of the administrative review process, or in the decision at the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision). . . .

(3) If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will *then* assess your residual functional capacity.

(emphasis added). Thus, the degree of functional limitation found at steps two and three of the sequential disability evaluation process is separate and distinct from the residual functional capacity assessment performed subsequently thereto. Indeed, SSR 96-8p, expressly provides in relevant part:

. . . The psychiatric review technique described in . . . [20 C.F.R. §] 416.920a . . . requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in [the four functional areas noted above in § 416.920a(c)(3), known also as the "paragraph B" criteria]. The adjudicator must remember that the limitations identified in the "paragraph B" . . . criteria are *not* an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential [disability] evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process *requires a more detailed assessment* by itemizing various functions contained in the broad categories found in [the "paragraph B" criteria].

1996 WL 374184 *4 (emphasis added). Accordingly, there is no inconsistency in the ALJ's findings here, as she was not required to include in her assessment of plaintiff's RFC moderate limitations in concentration, persistence or pace, merely because she found moderate difficulties existed in that area at step three.

ORDER - 19

therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See

Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the

claimant's disability "must be accurate, detailed, and supported by the medical record." Id.

(citations omitted).  The ALJ, however, may omit from that description those limitations he or

she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing

substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual

functional capacity. See AR 75-76.  In response to that question, the vocational expert testified

that an individual with those limitations – and with the same age, education and work experience

as plaintiff – would be able to perform other jobs. See AR 76.  Based on the testimony of the

vocational expert, the ALJ found that plaintiff would be capable of performing other jobs

existing in significant numbers in the national economy, and therefore that he was not disabled at

step five of the sequential disability evaluation process. See AR 21.

Plaintiff argues that because the ALJ's residual functional capacity assessment does not

encompass all of his limitations, the vocational expert's testimony is not supported by substantial

evidence.  The Court agrees given that, as discussed above, the ALJ failed to provide sufficient

reasons for rejecting the VA's Rating Decision, which in turn calls into question the accuracy of

the ALJ's RFC assessment.  The Court, however, rejects plaintiff's further contention that error

exists due to a conflict between the vocational expert's testimony concerning the jobs that could

be performed by the hypothetical person identified by the ALJ, and the descriptions of those jobs

contained in the Dictionary of Occupational Titles ("DOT").

The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only

insofar as the record contains persuasive evidence to support the deviation." Johnson v. Shalala,

ORDER - 20

60 F.3d 1428, 1435 (9th Cir. 1995).  The ALJ, furthermore, has the affirmative responsibility to

ask the vocational expert about possible conflicts between her testimony and information in the

DOT. Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704.

In addition, before relying on evidence obtained from a vocational expert to support a finding of

not disabled at step five, the ALJ is required to "elicit a reasonable explanation for any

discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1.  The

ALJ also must explain in his or her decision how the discrepancy or conflict was resolved. SSR

00-4p, 2000 WL 189704 *4.

Plaintiff argues a conflict exists in this case, "because all of the jobs [identified by the

vocational expert] involve working around machines, have production or performance quotas

and may require the worker to change tasks." ECF #13, p. 23.  At the hearing, the jobs identified

by the vocational expert were housekeeping cleaner (see DOT 323.687-014 , 1991 WL 672783),

production assembler (see DOT 706.687-010 , 1991 WL 679074) and electronics worker (see

DOT 726.687-010 , 1991 WL 679633).  Except for the job of production assembler, and possibly

the job of electronics worker, there are no specific references to working around machines as

opposed to tools.  See id.  In addition, no specific production or performance quotas are described

in the DOT's descriptions of those jobs, nor does plaintiff point to any. See id.

Lastly, while the DOT's descriptions thereof indicate different tasks may be performed,

again there is no indication as to any requirements regarding the ability to change between tasks.

Nor, to the extent the above factors are in play in regard to all three jobs, has plaintiff shown the

ALJ's residual functional capacity assessment, and therefore the hypothetical question posed, are

inconstant with the DOT's descriptions thereof.  Accordingly, this does not constitute a valid

basis for overturning the ALJ's step five determination.

ORDER - 21

Plaintiff also asserts error at this step on the basis that although the ALJ's determination that he was limited to performing simple, repetitive tasks is at odds with the Level 2 reasoning the DOT requires of the three jobs the vocational expert identified.  The Court once more finds no error here.  The DOT defines Level 1 through 2 reasoning as follows:

LEVEL 2

Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

LEVEL 1

Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

DOT, Appendix C.  The Court disagrees that the ALJ's limitation to simple, repetitive tasks is commensurate with Level 1 reasoning in this case.  Several courts have found Level 2 reasoning to be consistent with the ability to do simple, routine and/or repetitive work tasks. See, e.g., Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding Level 2 reasoning to be more consistent with limitation to simple, routine work tasks); Meissl v. Barnhart, 403 F.Supp.2d 981, 983-85 (C.D. Cal. 2005) (finding limitation to simple and repetitive tasks to be closer to Level 2 reasoning); Flaherty v. Halter, 182 F.Supp.2d 824, 850-51 (D. Minn. 2001) (finding Level 2 reasoning did not conflict with limitation to work involving simple, routine, repetitive, concrete, and tangible tasks).

It is true that at least one court appears to disagree with the position taken by the above courts. Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997) (rejecting contention that claimant limited to following only simple instructions can engage in full range of sedentary work because

ORDER - 22

many unskilled jobs in that category require reasoning levels of 2 or higher).  However, the

Court finds more persuasive the discussion of this issue made by the United States District Court

for the Central District of California:

> This leaves the question of whether the vocational expert's opinion contradicted the DOT's descriptions for Meissl's other work as a stuffer given the ALJ's RFC finding limiting Meissl to "simple, repetitive" tasks. The Court finds that it does not.
>
> As one goes up the numerical reasoning development scale used by the DOT, the level of detail involved in performing the job increases while the job task becomes less routine. For example, a job with a reasoning level of one only requires that the worker be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions" in "standardized situations with occasional or no variables." DOT at 1011. In contrast, a job with a reasoning level of three would require that the worker "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and deal "with problems involving several concrete variables ...." DOT at 1011. The middle ground between these two points is also where the vocational expert identified a job with the lowest reasoning development score that Meissl could perform, namely a stuffer.
>
> A job with a reasoning level of two requires that the worker "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and deal with problems "involving a few concrete variables ...." DOT at 1011. Thus, such a job would involve more detail, as well as a few more variables, than that with a reasoning level of one. The question becomes whether a person limited to carrying out simple, repetitive instructions could still perform a job with such a reasoning score.
>
> Meissl focuses on the fact that the DOT description for a reasoning level of 2 uses the word "detailed." Essentially, Meissl seeks to equate the DOT's use of the word "detailed" with the Social Security regulations' use of the word "detailed instructions" in formulating a claimant's mental RFC. The Court is not convinced that such a neat, one-to-one parallel exists between the two.
>
> The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii); *see also* 20 C.F.R. part 404, subpart P, Appendix 1, Listing 12.00C(3) ("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks"). The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one- or two-step instructions" at

ORDER - 23

level one), moving up to the most complex ("applying principles of logical or scientific thinking ... apprehend the most abstruse classes of concepts" at level six). DOT at 1010-1011. To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

Even more problematic for Meissl's position is that she ignores the qualifier the DOT places on the term "detailed" as also being "uninvolved." This qualifier certainly calls into question any attempt to equate the Social Security regulations' use of the term "detailed" with the DOT's use of that term in the reasoning levels. Instead of simply seeking to equate the two scales based on the serendipity that they happen to employ the same word choice, a much more careful analysis is required in comparing the claimant's RFC with the DOT's reasoning scale.

Here, the ALJ found that Meissl could perform not just simple tasks but also ones that had some element of repetitiveness to them. A reasoning level of one on the DOT scale requires slightly less than this level of reasoning. While reasoning level two notes the worker must be able to follow "detailed" instructions, it also (as previously noted) downplayed the rigorousness of those instructions by labeling them as being "uninvolved."

The Court finds that there is much to recommend for believing that Meissl's reasoning level is at level two rather than at level one. A reasoning level of one indicates, both by the fact that it is the lowest rung on the development scale as well as the fairly limited reasoning required to do the job, as applying to the most elementary of occupations; only the slightest bit of rote reasoning being required. For example, the DOT describes the following jobs as requiring only a reasoning level of one: Counting cows as they come off a truck (job title Checker (motor trans.)); pasting labels on filled whiskey bottles (job title Bottling-Line Attendant (beverage)); and tapping the lid of cans with a stick (job title Vacuum Tester, Cans). *See* DOT at 931, 936, 938. Someone able to perform simple, repetitive instructions indicates a level of reasoning sophistication above those listed. Other courts have so held. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir.2005) (holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"); *Money v. Barnhart*, 91 Fed.Appx. 210, 214, 2004 WL 362291, at *3 (3rd Cir.2004) ("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive"). As one court explained:

The ALJ's limitation for the Plaintiff, with respect to an appropriate reasoning level, was that she could perform work which involved simple, routine,

ORDER - 24

repetitive, concrete, tangible tasks. Therefore, the DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation. Although the DOT definition does state that the job requires the understanding to carry out detailed instructions, it specifically caveats that the instructions would be uninvolved-that is, not a high level of reasoning.

*Flaherty v. Halter*, 182 F.Supp.2d 824, 850 (D.Minn.2001).

Meissl v. Barnhart, 403 F.Supp.2d 981, 983-85 (C.D.Cal. 2005). Accordingly, here too the Court finds no conflict between the vocational expert's testimony and the DOT's descriptions of the jobs the vocational expert identified.

V.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

ORDER - 25

Because the ALJ failed to provide sufficient reasons for rejecting the VA's Rating Decision, and because that failure calls into question the accuracy of the ALJ's assessment of plaintiff's RFC and thus the vocational expert's testimony at step five as well, the Court finds remand for further consideration of these issues to be warranted.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled.  Accordingly, defendant's decision is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 20th day of February, 2013.


Karen L. Strombom
United States Magistrate Judge

ORDER - 26